UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MARK CORNISH, individually and f/u/b/o**
**ST. PAUL FIRE & MARINE INS. CO.,**

**Plaintiffs,**

vs.                                                              Case No.: 8:06-CV-1722-T-27EAJ

**RENAISSANCE HOTEL OPERATING**
**COMPANY, WSRH VSP, L.P., and**
**THE VINOY CLUB, L.C.,**

**Defendants.**
_____/

## ORDER

**BEFORE THE COURT** is Plaintiffs' Motion for New Trial (Dkt. 116), and Defendants' response in opposition (Dkt. 119). Upon consideration, Plaintiffs' motion is DENIED.

### *Background*

In this action, Plaintiffs sought damages in a two count complaint alleging negligence and breach of an oral contract (Dkt. 1). Plaintiff Cornish's vessel was moored at Defendants' dock facility in St. Petersburg during the passing of Hurricane Dennis in July 2005. As a result of the storm, tropical storm strength winds impacted the Vinoy marina. During the storm, the vessel broke free of its mooring, was damaged, began taking on water and ultimately sank. Plaintiffs alleged that Defendants were liable because the dock facility was negligently designed and maintained and that Defendants breached an oral contract by failing to provide an adequately designed and maintained dock facility (Dkt. 1, ¶¶ 16 - 17, 20). A jury trial began on February 25, 2008. (Dkt. 95). The jury returned a verdict in Defendants' favor on both counts, finding that the damages complained of were

1

caused by an "Act of God" and that Defendants did not breach an oral contract. (Dkt. 112).

In the instant motion, Plaintiffs assert three grounds for a new trial: (1) Defendants' motion for judgment as a matter of law (Dkt. 104) was incorrectly granted on Plaintiffs' negligent design claim, or, in the alternative, the Court erred in excluding evidence regarding the design of the dock facility; (2) the motion to amend to add a failure to warn claim (Dkt. 105) was incorrectly denied; and (3) the Court erred in giving the Act of God defense instruction, or, in the alternative, there was insufficient evidence to support the verdict.

### *Standard*

Pursuant to Rule 59 of the Federal Rules of Civil Procedure, a court may grant a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). Recognized grounds for a new trial include: the verdict was against the clear weight of the evidence, the damages were excessive, there were substantial errors in admission or rejection of evidence or instructions to the jury, or the trial was otherwise not fair to the moving party. *See Steger v. Gen. Elec. Co.,* 318 F.3d 1066, 1081 (11th Cir.2003); *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251 (1940). Resolution of a motion for a new trial is committed to the discretion of the trial court. *Montgomery v. Noga,* 168 F.3d 1282, 1295 (11th Cir.1999).

### *Discussion*

**1.** *Directed verdict on negligent design claim*

At the conclusion of the evidence, Defendants' motion for judgment as a matter of law on Plaintiffs' claim of negligent design was granted, because Plaintiffs produced no evidence that Defendants designed the dock facility at the Vinoy marina. Accordingly, Plaintiffs' counsel were

2

instructed not to argue their negligent design theory to the jury. To the extent Plaintiffs' motion for a new trial is construed as a motion for reconsideration of the judgment as a matter of law on the negligent design claim, that motion is denied.

"Judgment as a matter of law for the defendant is due when there is insufficient evidence to prove an element of the claim, which means that no jury reasonably could have reached a verdict for the plaintiff on that claim." *Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1149 (11th Cir. 2005). In ruling on a Rule 50 motion, the court must "consider all the evidence in the light most favorable to the nonmoving party, and independently determine whether the facts and inferences point so overwhelmingly in favor of the movant . . . that reasonable people could not arrive at a contrary verdict." *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1308 (11th Cir. 1998) (internal quotations omitted). "The nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law." *Id.*

Although Plaintiffs contend that "the directed verdict ruling was improper" (Dkt. 116 at 7), Plaintiffs take no issue with the Court's finding that Plaintiffs introduced no evidence that Defendants designed the dock facility. That lack of evidence undermined a fundamental element of Plaintiffs' negligent design claim. *See Vincent v. C.R. Bard, Inc.*, 944 So. 2d 1083, 1085-86 (Fla. 2d DCA 2006) (designer of a product may be held liable for negligent design); *see e.g., Miller Indus. v. Caterpillar Tractor Co.*, 733 F.2d 813, 818 (11th Cir. 1984) (negligent design claim against engine manufacturer); *Moser v. Texas Trailer Corp.*, 623 F.2d 1006, 1013 (5th Cir. 1980) (negligent design claim against module manufacturer); *Jig Third Corp. v. Puritan Marine Ins. Underwriters Corp.*, 519 F.2d 171, 173 (5th Cir. 1975) (negligent design claim against boat manufacturer); *see also Harrison v. Flota Mercante Grancolombiana*, 577 F.2d 968, 977 (5th Cir. 1978) (general maritime

law incorporates general law of torts when not inconsistent).

Consistent with Plaintiffs' alternative theory of negligence, the jury was instructed that Plaintiffs' first claim was that "Defendants negligently failed to provide an adequate dock facility and/or negligently maintained the dock facility" (Dkt. 111, p. 8). The jury was instructed on the duty of care owed by Defendants to the owner of the vessel:

> Defendants had a duty to exercise reasonable care to furnish a safe berth and to avoid damage to the vessel. This includes the duty to ascertain the condition of the berth, to make it safe or warn the vessel of any hidden hazard or deficiency known to them or which, in the exercise of reasonable care and inspection, should be known to them and not reasonably known to Mr. Cornish.
>
> Defendants are not the guarantor of the safety of Plaintiffs' vessel, but had the obligation to exercise reasonable care in furnishing a safe berth. The proper mooring of a vessel is the responsibility of the vessel and her master, not the dock owner.
>
> The owner of a berth is obligated to provide fittings that will not fail. The failure of the cleats creates a presumption of negligence in the manner of their construction and maintenance.

(Dkt. 111, p. 12).

The authorities relied on by Plaintiffs in their motion confirm that a claim against a wharfinger is premised on its duty to provide a safe berth, including keeping the berth in sound repair. *See N.Y. Cent. R. Co v. Am. Dock Co.*, 80 F. Supp. 368, 370 (S.D.N.Y. 1947); *Schwerman Trucking Co. v. Gartland S.S. Co.*, 496 F.2d 466, 473, 478 (7th Cir. 1974). That is the claim which went to the jury, consistent with the evidence.

Plaintiffs alternatively argue that the Court improperly prevented them from arguing negligent design in closing arguments or "led counsel for the Plaintiffs to believe" that such argument was prohibited. (Dkt. 116 at 8, 9). Plaintiffs argue that the evidence of negligent design was relevant to whether Defendants were on notice that they should have "repaired and/or redesigned

the entire system during their ownership of the marina," or alternatively, warned Plaintiffs of its alleged inadequacies. Plaintiffs' arguments are not persuasive.

First, to the extent counsel contend that they were mislead or uncertain about the parameters of appropriate argument after Defendants' motion was granted, that should have been addressed before final argument was presented to the jury.[1] In fact, the Court anticipated counsel's dilemma, expressly instructing counsel, in ruling on Plaintiff's *ore tenus* motion to amend:

> And by way of argument, Mr. Black may argue . . . or whoever is arguing . . . that includes a duty to withstand tropical force winds under the circumstances, but do not argue that these defendants are responsible for the design of this marina."
>
> You have evidence to support an argument that the - - defendants undertook an active role in maintaining and repairing and replacing these docks and, as such, if the docks were not adequate to withstand tropical force winds, that is evidence that they did not fulfill their duty of furnishing a safe berth . . .
>
> so I'm going to grant it as to your first theory, deny it as to failure to warn. I don't

---

[1] In discussing with counsel the ruling on Defendants' motion for judgment as a matter of law on the negligent design claim, the Court observed:

> [T]here is obviously a duty on the part of the defendants to provide an adequate dock facility and to maintain it in such a way that there would be safe mooring. Mr. Caldwell's replacement of A Dock did not materially alter or affect the existing design of the dock system as it pertains to the plaintiff's boat. Therefore, there is no basis for negligent design theory.
> . . . .
> Now you've got a little bit of a dilemma in light of my ruling. So much of the energy and effort has been directed in this trial to the design and the attenuation system and all of that. Now I've effectively removed that theory from the jury's consideration. Give some thought as how you'd like me to handle that by way of cautionary and explanatory instruction. (Dkt. 116, Exh. A at 13-14).

The Court ultimately gave a cautionary instruction to the jury, which provided, in part:
> The issue is, as I've stated, that plaintiff contends that the defendants were negligent in failing to provide an adequate dock facility. And you'll hear more about that; essentially a safe berth for the vessel, and negligent in maintaining the dock facility.
> . . . . There are some exhibits in evidence specifying the design criteria that were followed back in the early nineties. And that's all informational, historical information that's going to be with you in the jury room. But remember that these defendants are not claimed to have actually designed the marina. (Dkt. 116, Exh. B at 82).

>think there's evidence to suggest that these defendants were on actual knowledge or had reason to know of a design limitation."

(Dkt. 116, Exhibit B at p. 65-66).

Since there was no evidence that these Defendants designed the dock, that theory of negligence was properly removed from the jury's consideration. Because Plaintiffs had introduced substantial evidence addressed to alleged design deficiencies, the jury was appropriately instructed that there was no claim that these Defendants designed the dock (Dkt. 116, Exh. B at 82). Argument pertaining to Plaintiffs' unsupported negligent design theory was therefore properly restricted.

The dilemma facing Plaintiffs' counsel when a primary theory of liability has been removed from the jury's consideration is understandable, but in no event cause for a new trial. In any event, Plaintiffs' substantial rights were not affected by the limitations placed on counsel's final argument. Plaintiffs' attorneys were not, as Plaintiffs seemingly contend, prevented from arguing that the evidence demonstrated that Defendants were negligent in their duty as a wharfinger to provide a safe and adequate dock facility.

Second, the ruling on Defendants' motion did not remove relevant evidence from the jury's consideration. Pursuant to Rule 61, all errors and defects in admitting or excluding evidence "that do not affect any party's substantial rights" must be disregarded. Accordingly, "the inquiry is always directed to the same central question -- how much of an effect did the improperly admitted or excluded evidence have on the verdict?" *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004). Apart from the negligent design theory, Plaintiffs were afforded wide latitude in arguing that the evidence established that Defendants were negligent in providing an adequate dock facility. The case went to the jury on Plaintiffs' contention that Defendants were negligent in failing

6

to provide an adequate dock facility, consistent with Plaintiffs' *ore tenus* motion to amend the pleadings to conform with the evidence and Count I of the Complaint (Dkt. 1, ¶¶ 16, 17).

Consistent with their theory that Defendants were negligent in failing to provide and maintain an adequate and safe dock, Plaintiffs argued to the jury that the docks and cleats were inadequate. For instance, during closing, Plaintiffs's counsel argued:

> Now, you heard Mr. Cornish testify and Mr. Kornack, I believe, that the marina had gone through several hurricanes before. But the significant difference here was that the wind was coming from the east. That put this marina at risk. That made the marina, the floating docks and the cleats inadequate to properly protect Mr. Cornish's vessel. (Dkt. 119, Exh. B at 95).
> . . .
> Now what did Mr. Samara say? The cleats were the weak link. The cleats were weaker than the lines. Mr. Loporcaro agreed that the cleats were weaker than the lines. Remember that when you deliberate. (*Id.* at 118-19).
> . . .
> The defendants knew of the vulnerability of their docks. If you look at Exhibits 33 and 34, in 1999 the docks had problems, too. They should have known that they had vulnerability. They should certainly have warned Mr. Cornish. . . . Nobody had told him about the vulnerability of the -- of the marina to winds from the east. Had he known that, he probably would have moved it, but he didn't know that. (*Id.* at 119).

These statements belie Plaintiffs' contention that they were "precluded" from arguing evidence relevant to the adequacy of the dock facility. Moreover, the jury was instructed that failure of the cleats created a presumption of negligence on the part of Defendants.[2]

In the instant motion, Plaintiffs do not identify any specific evidence that they would have argued to the jury. To the extent Plaintiffs argue that the Court erred in excluding from the jury's

---

[2] The Court instructed the jury:
Defendants had a duty to . . . . ascertain the condition of the berth to make it safe or warn the vessel of any hidden hazard or deficiency known to them, or which in the exercise of reasonable care and inspection should be known to them and not reasonably known to Mr. Cornish. . . . The owner of a berth is obligated to provide fitting that will not fail. The failure to the cleats creates a presumption of negligence in the manner of their construction and maintenance, if you find that the cleats failed. (Dkt. 111 at 12).

7

consideration the original design criteria and warranty provided by the original designer, Florida Floats, this evidence was irrelevant to the jury's assessment of negligence as to Defendants' duty to provide an adequate dock facility. As discussed, there was no evidence that Defendants had actual or constructive knowledge of a design limitation by virtue of this evidence.

### 2. *Motion to amend was properly denied*

As a second ground for a new trial, Plaintiffs argue that the Court improperly denied their motion to amend pursuant to Rule 15(b) of the Federal Rules of Civil Procedure to assert a "failure to warn" negligence claim. The decision whether to allow the amendment of pleadings at the conclusion of a trial is within the discretion of the trial court. *Borden, Inc. v. Fla. E. Coast Ry. Co.*, 772 F.2d 750, 758 (11th Cir.1985).

A wharfinger owes a duty to warn of "any hidden hazard or deficiency *known to the wharfinger or which*, in the exercise of reasonable care and inspection, *should be known to him* and not reasonably known to the shipowner." *Trade Banner Line, Inc. v. Caribbean S.S. Co., S.A.*, 521 F.2d 229, 230 (5th Cir. 1975) (emphasis added). The jury was instructed on this duty.[3] Plaintiffs' motion to amend was denied because there was no evidence suggesting that Defendants had actual or constructive knowledge of the claimed design deficiency. (Exh. B at 66). Accordingly, "amendment of the pleadings would have been an exercise in futility" because there was no evidence supporting the claim. *See Fisher v. Indiana Lumbermens Mut. Ins. Co.*, 456 F.2d 1396, 1399 (5th Cir. 1972).

---

[3] Defendants had a duty to exercise reasonable care to furnish a safe berth and to avoid damage to the vessel. This includes the duty to ascertain the condition of the berth, to make it safe or warn the vessel of any hidden hazard or deficiency known to them or which, in the exercise of reasonable care and inspection, should be known to them and not reasonably known to Mr. Cornish. (Dkt. 111, p. 12).

In the instant motion, Plaintiffs point to no evidence demonstrating that Defendants had actual or constructive knowledge of the claimed design deficiency. Rather, Plaintiffs reiterate their argument that the dock was inadequately designed. That evidence is, however, irrelevant, in the absence of evidence that Defendants, who did not design the dock, knew or should have known of the design limitations. *See Trade Banner Line, Inc.*, 521 F.2d at 230 (imposing duty to warn only as to hazards for which the wharfinger had actual or constructive knowledge).

### 3. *Act of God*

Lastly, Plaintiffs argue that the "Act of God" instruction should not have been submitted to the jury because there was insufficient evidence supporting this affirmative defense. Pursuant to Rule 51, a party objecting to an instruction must do so on the record and may assign as error only those errors to which the party properly objected. Fed. R. Civ. P. 51(c)-(d). "This rule exists 'to prevent unnecessary new trials because of errors the judge might have corrected if they had been brought to his attention at the proper time." *Ford ex rel. Estate of Ford v. Garcia*, 289 F.3d 1283, 1288 (11th Cir. 2002) (quoting *Pate v. Seaboard R.R.*, 819 F.2d 1074, 1082 (11th Cir.1987)). The only exception to this rule is when there is plain error affecting substantial rights. Fed. R. Civ. P. 51(d).

Plaintiffs did not object to the "Act of God" instruction. In fact, after the Court discussed at length the instruction, Plaintiffs' counsel confirmed: "That's fine your honor." (Dkt. 119, Exh. B at 41). "[W]here a party, rather than just remaining silent and not objecting to a proposed jury instruction, responds to the court's proposal with the words 'the instruction is acceptable to us,' this constitutes invited error and is not assignable as error on appeal." *Ford*, 289 F.3d at 1294. Moreover, even to the extent Plaintiffs did not agree to the "Act of God" instruction, there was

sufficient evidence to support that affirmative defense.

Plaintiffs essentially argue that the jury's verdict, to the extent it was premised on the "Act of God" defense, was against the great weight of the evidence. When a motion for a new trial is on the grounds that the verdict is against the weight of evidence, "a trial judge must determine if in his opinion, the verdict is against the clear weight of the evidence . . . or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Ins. Co. of N. Am. v. Valente*, 933 F.2d 921, 922-23 (11th Cir. 1991) (internal quotations omitted) (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir.1984)). Moreover, "new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great - not merely the greater - weight of the evidence." *Id.*

Plaintiffs argue that the evidence regarding the wind speeds was insufficient to find that the storm was an "Act of God." As to the second element of the defense, the jury was instructed that Defendants must establish: "[t]hat the weather conditions encountered constituted an uncontrollable and unforeseeable cause by 'Act of God.'" (Dkt. 111 at 16). Plaintiffs argue that the parties stipulated that the sustained wind speeds did not exceed 30 to 45 miles per hour and the gusts did not exceed 50 miles per hour. Plaintiffs argue that these wind speeds were not sufficient to constitute an "Act of God."

As Defendants note, Howard Kornack testified that "the northeast quadrant of a hurricane is by far the worst. That's where all the heaviest winds are, and that's where Dennis was. It was offshore but it stalled and we got pounded with those winds from the northeast quadrant." (Dkt. 119, Exh. D at 78). Kornack further testified that the winds were tropical storm strength and that the winds were steady between July 9th and July 10th. (*Id.* at 78-79). Based on this evidence, the jury's

verdict that the weather conditions were uncontrollable and unforeseeable was not against the great weight of the evidence.[4]

Second, Plaintiffs correctly note that in order for Defendants to prevail on the "Act of God" defense, the jury would have to find no contributing human negligence. The jury was instructed accordingly. (Dkt. 111 at 16). The jury was also instructed that the "failure of the cleats creates a presumption of negligence in the manner of their construction and maintenance." (Dkt. 111 at 12). Plaintiffs argue that "[t]he evidence presented by the Plaintiffs' [sic] through the trial clearly established that there was at least some negligence on the part of Defendants." (Dkt. 116 at 15). In support of this assertion, Plaintiffs state that "up to four cleats completely failed during [sic] storm event." (Dkt. 116 at 15).

Even to the extent the evidence demonstrated that cleats failed, the presumption of negligence is only that, a presumption. There was conflicting evidence as to whether the cleats failed, the lines failed, or a combination of both occurred. What was undisputed is that the marina was subjected to sustained tropical force winds and that the marina "got pounded with those winds from the northeast quadrant." Accordingly, the jury could reasonably have found that the presumption of negligence was rebutted and that the cleats failed due to the prolonged force of the easterly winds, as described by Kornack, not due to any inadequacy of the dock facility or any negligence on the part of Defendants. Accordingly, the jury could reasonably find that there was no human negligence and that the vessel broke free because of an "Act of God." The jury's verdict was

---

[4] As Plaintiffs themselves note, the question of whether an event is an Act of God "should turn not upon technical, meteorological definitions, but upon the issue of whether the disturbance causing the damage, by whatever term it is described, is of such unanticipated force and severity as would fairly preclude charging a carrier with responsibility for damage occasioned by its failure to guard against it in the protection of property committed to its custody." *Compania De Vapores Insco, S.A. v. Missouri Pac. R. Co.*, 232 F.2d 657, 660 (5th Cir. 1956).

not against the great weight of the evidence.

Finally, Plaintiffs renew their objection to the admission of a videotape taken by an employee of the marina during the storm, on the ground that it was not produced until the "eve of trial" (Dkt. 116 at 15). The video was taken on the morning that Plaintiffs' vessel broke free from its mooring and showed the waves and winds impacting the entire marina. As the video scans the marina from east to west, Plaintiffs' vessel can be seen rocking in its berth with its lines tight. As the video scans back to the west, Plaintiffs' vessel can be seen after it breaks free from its mooring, impacting the dock.

Plaintiffs argue that because of the late disclosure of the video, they were prejudiced by not being able to introduce expert testimony as to why the storm was not an "Act of God." This argument is without merit. Plaintiffs were on notice from the filing of Defendant's answer on November 13, 2006 that Defendants claimed that the storm was an "Act of God." (Dkt. 9, ¶ 33). The parties stipulated to the wind speeds and each side introduced lay witness testimony describing the storm. Plaintiffs had ample opportunity to have an expert address whether the storm was uncontrollable, unforeseeable, or otherwise an "Act of God."

The late disclosure and introduction of the video did not prejudice Plaintiffs. It was, as the Court noted, the best evidence of the storm's effect on the marina. The jurors were able to see for themselves the impact of the storm as it passed through the area and could actually observe Plaintiff's vessel before and after it broke free from its mooring. According to Regis Williams, the marina employee who took the video, he located the videotape a month before trial and it was produced to Plaintiffs on February 6, 2008. The introduction of the videotape did not affect the substantial rights of the Plaintiffs. *See United States v. Bueno-Sierra*, 99 F.3d 375, 380 (11th

Cir.1996) (noting that substantial rights are violated when the defendant is "unduly surprised and lacks an adequate opportunity to prepare a defense.").

## *Conclusion*

Upon consideration, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion for New Trial (Dkt. 116) is **DENIED**.

**DONE AND ORDERED** in chambers this __15th__ day of April, 2008.

                                               JAMES D. WHITTEMORE
                                               United States District Judge

Copies to:
Counsel of Record